**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| PAUL SAUMER and WALTER A. SKALSKY, individually and on behalf of all others similarly situated, | CASE NO.  1:15-cv-954-DAP |
| **Plaintiffs,** | **JUDGE DAN AARON POLSTER** |
| vs. | <u>ORDER AND OPINION</u> |
| CLIFFS NATURAL RESOURCES INC., et al., | |
| **Defendants.** | |

Before the Court is Defendants' Motion to Dismiss Plaintiffs' Second Amended Complaint. For the reasons set forth herein, the Court grants the Defendants' Motion to Dismiss in part and dismisses the above-captioned case.

**I.    Background**

   **A.    Factual Allegations**

Plaintiffs Paul Saumer and Walter A. Skalsky ("Plaintiffs"), individually and on behalf of the class members and the Northshore Mining Company and Silver Bay Power Company Retirement Savings Plan (the "Plan"), allege various fiduciary breaches under the Employment

Retirement Income Security Act of 1974 ("ERISA"). Second Amended Class Action Complaint ("SAC") ¶¶ 1–2, Doc #: 37. The SAC names several Defendants, including Cliffs Natural Resources, Inc. ("Cliffs") and the Northshore Mining Co. ("Company Defendants"), members of the Cliffs Investment Committee ("Investment Committee Defendants"), various Cliffs Officers ("Officer Defendants"), and the Northshore Employee Benefits Administration Department and those individuals acting on its behalf ("Plan Administrator Defendants").[1] *Id.* ¶¶ 9–16. According to the SAC, Defendants "allowed the investment of the Plan's assets in Cliffs Stock throughout the Class Period despite the fact that they knew or should have known that the investment was imprudent as a retirement vehicle." *Id.* ¶ 6. Plaintiffs allege that the value of shares in Cliffs Stock within their respective Plan accounts diminished by several thousand dollars due to Defendants' breaches of fiduciary duty. *Id.* ¶ 21.

According to the SAC, both Plaintiffs are participants in the Plan and held shares of Cliffs Stock during the Class Period. *Id.* ¶ 21. The SAC alleges that the Plan was "designed to 'help [Participants] meet [their] long-term financial goals by encouraging [them] to save part of [their] earnings and assists [Participants] through Company contributions in accumulating additional funds for [their] retirement.'" *Id.* ¶ 62 (alteration in original) (quoting SAC Exhibit E, Doc #: 37-6). The SAC further explains that Plan participants may elect to contribute anywhere from one to thirty-five percent of their compensation for either pre-tax or after-tax contributions to the Plan. *Id.* ¶ 65. In addition, Northshore makes matching contributions that are invested in the same investments as Plan participants designate for their own employee contributions. *Id.* ¶ 66. The SAC alleges that the Plan's funds are invested in Cliffs Stock and mutual funds offered

---

[1] The Court refers to all these parties collectively as "Defendants."

through T. Rowe Price. *Id.* ¶ 68. Plaintiffs contend that Cliffs Stock constituted most of the Plan's assets "by a wide margin"—the SAC indicates that, as of December 2011, the Plan held $32,954,253 worth of Cliffs Stock. *Id.* The next closest investment option held $9,814,253. *Id.*

In the SAC, Plaintiffs allege numerous facts bearing upon Defendants' fiduciary breaches, including several "red flags" that should have alerted the Plan's fiduciaries that Cliffs Stock was an imprudent investment option. *Id.* ¶¶ 81–156. Specifically, Plaintiffs contend that "(1) Cliffs Stock was artificially inflated; and (2) the Company's basic risk profile had been so dramatically altered due to changed circumstances that it was no longer a prudent retirement investment." *Id.* ¶ 81. The SAC details a number of facts allegedly supporting this claim, including Cliffs' questionable acquisition of Bloom Lake in 2011, the downturn for the United States coal industry, the declining value of Cliffs' Stock, and other signs of the company's financial deterioration. *Id.* ¶¶ 81–156. Ultimately, Plaintiffs allege that they lost a significant portion of their retirement investments due to Defendants' fiduciary breaches in connection with the Plan. *Id.* ¶ 182.

### B. Procedural History

On May 14, 2015, Plaintiffs filed the above-captioned case. Compl., Doc #: 1. On August 25, 2015, Plaintiffs filed an Amended Class Action Complaint, Doc #: 17, in order to clarify the appropriate Defendant-fiduciaries and streamline any motion practice. *See* Stip. and Order 1–2, Doc #: 12. The Court held a Case Management Conference ("CMC") on September 3, 2015. Minutes of CMC and Scheduling Order, Doc #: 27. Following discussions at the CMC, the Court instructed Plaintiffs to file a shorter and clearer amended complaint that would "clearly describe the theory or theories of liability, allege what Defendants should have done differently

to fulfill their fiduciary obligations and when they should have done it, and allege specifically what economic loss was caused by Defendants' actions or inactions." *Id*. at 1. Pursuant to these instructions, Plaintiffs filed the SAC on November 2, 2015. The SAC includes two counts of breach of ERISA's fiduciary duty (Counts I and II) and one count of failure to monitor under ERISA (Count III).

On December 16, 2015, Defendants filed the instant Motion to Dismiss the SAC, Doc #: 38. Defendants allege that the SAC fails to state a claim for breach of fiduciary duty and satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). Def.'s Mem. in Support of Mot. to Dismiss 5–30, Doc #: 38-1. In addition, Defendants argue that Plaintiff's "monitoring" claim falls with the inadequately-pled breach of fiduciary duty claims. *Id*.

## II. Legal Standard

Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must allege sufficient facts to compose "a short and plain statement of the claim showing that the pleader is entitled to relief." In evaluating a Rule 12(b)(6) motion to dismiss, courts must construe the complaint in the light most favorable to the plaintiff and accept the complaint's allegations as true, drawing all reasonable inferences in favor of the plaintiff. *Crugher v. Prelesnik*, 761 F.3d 610, 613 (6th Cir. 2014). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While the plausibility requirement is not a heightened or "probability" pleading requirement,

-4-

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice. *Id.* Dismissal with prejudice is inappropriate where "a more carefully drafted complaint might state a claim." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003).

Under Fed. R. Civ. P. 9(b), there is a heightened pleading requirement for actions sounding in fraud: "a party must state with particularity the circumstances constituting fraud or mistake." This includes identifying the "who, what, when, where, and how" of the alleged fraud. *Bondali v. Yum! Brands, Inc.*, 620 Fed. App'x 483, 488–89 (6th Cir. 2015) (citing *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006)).

### III. Discussion

#### A. Pleading Standard

As a preliminary matter, the Court first addresses Defendants' argument that the SAC does not satisfy Fed. R. Civ. P. 9(b). *See* Def.'s Mem. 21–23. Consistent with other courts in this circuit, the Court finds that Rule 9(b) does not here apply and instead applies the ordinary Rule 8 pleading standard. The Sixth Circuit has yet to determine whether Rule 9(b) applies to breach of fiduciary duty actions brought pursuant to ERISA. Nevertheless, district courts in this circuit have routinely applied Rule 8 to ERISA fiduciary duty actions. *See, e.g.*, *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 821–23 (S.D. Ohio 2004) (holding that Rule 8 applies to breach of ERISA fiduciary duty claims); *Rankin v. Rots*, 278 F. Supp. 2d 853, 866 (E.D. Mich. 2003) ("Here, [plaintiffs] claim that [defendants] violated their fiduciary duties under ERISA. While some of the allegations in support of their claim are similar to fraud allegations, i.e. that they provided false and misleading information, the gravamen of [plaintiffs'] claim is grounded

in ERISA. The heightened pleading requirement under Rule 9(b) will not be imposed where the claim is for a breach of fiduciary duty under ERISA"). *But see Crocker v. KV Pharm. Co.*, 782 F. Supp. 2d 760, 784 (E.D. Mo. 2010) (discussing application of Rule 9(b) to actions for breach of ERISA's fiduciary duty); *Johnson v. Radian Grp., Inc.*, No. 08-CV-2007, 2009 WL 2137241, 2009 U.S. Dist. LEXIS 61334, at *12 (E.D. Pa. July 16, 2009) ("Although Rule 8's pleading requirements apply generally to ERISA claims for breach of fiduciary duty, as other courts in this circuit have noted, to the extent that any claims sound in fraud, they are subjected to the heightened pleading requirements of Rule 9(b)"). The instant case alleges no fraud, only standard actions for breach of ERISA's fiduciary duty. Therefore, the Court follows the other courts in this circuit and applies Rule 8.[2]

### B. Counts I and II

In the SAC, Plaintiffs allege Breaches of Fiduciary Duties in Violation of ERISA §§ 404(a)(1)(B) and 405 by the Company Defendants, Investment Committee Defendants, and Plan Administrator Defendants (Count I), Breaches of Fiduciary Duties in Violation of ERISA §§ 404(a)(1)(A) and 405 by the Company Defendants, Officer Defendants, Investment Committee Defendants, and Plan Administrator Defendants (Count II), and Breaches of Fiduciary Duties in Violation of ERISA § 404 by the Officer Defendants (Count III). Though breach of ERISA's fiduciary duty is one cause of action, Plaintiffs presumably bring separate counts to make various allegations against different Defendants. The Court first addresses the standard for breach of ERISA's fiduciary duty. Next, the Court addresses each count in turn.

---

[2] Because the Court ultimately finds that the SAC fails to satisfy Rule 8, evaluating the SAC under the heightened Rule 9(b) standard would be superfluous.

### 1. Breach of Fiduciary Duty Under ERISA

Pursuant to § 1002(21)(A) of ERISA,

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). "ERISA imposes high standards of fiduciary duty upon administrators of an ERISA plan." *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). Under ERISA, "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). The Sixth Circuit has held that ERISA's fiduciary duty involves three components: "(1) a duty of loyalty, requiring that all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries; (2) a prudent person fiduciary obligation, requiring that a plan fiduciary exercise his or her duties with the care, skill, prudence, and diligence of a prudent person acting under similar circumstances; and (3) a duty to act for the exclusive purpose of [providing] benefits to plan participants." *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 448–49 (6th Cir. 2002) (quoting *Krohn*, 173 F.3d at 547) (internal quotation marks omitted). With regard to Counts I and II of the SAC, components (1) and (2) of ERISA's fiduciary duty are at issue.

#### a. Duty of Prudence

Pursuant to the ERISA duty of prudence, the fiduciary of a pension plan must "act prudently in managing the plan's assets." *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459,

2463 (2014). ERISA defines prudence as acting "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Notably, ERISA also requires the terms of a plan to be set forth in a written document. 29 U.S.C. § 1102(a)(1). If a fiduciary does not act "in accordance with the documents and instruments governing the plan," he or she may be liable for breach of fiduciary duty. 29 U.S.C. § 1104(a)(1)(D).

Until recently, the Sixth Circuit applied a "presumption of prudence" in Employee Stock Ownership Plan ("ESOP") cases brought pursuant to ERISA. *See Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585 (6th Cir. 2012), *abrogated by Dudenhoeffer*, 134 S. Ct. 2459 (2014). Under the presumption of prudence, "a fiduciary's decision to remain invested in employer securities [was] presumed to be reasonable." *Id.* at 591. A plaintiff could rebut the presumption only "by showing that a prudent fiduciary acting under similar circumstance would have made a different investment decision." *Id.* (quoting *Kuper v. Iovenko*, 66 F.3d 1447, 1459 (6th Cir. 1995), *abrogated by Dudenhoeffer*, 134 S. Ct. 2459). However, the Supreme Court recently eliminated the presumption of prudence in *Dudenhoeffer*. 134 S. Ct. 2467. In *Dudenhoeffer*, the Court held that "ESOP fiduciaries are subject to the duty of prudence just as other ERISA fiduciaries are." *Id.* In addition, the Court set forth a "context specific" inquiry to address motions to dismiss in breach of prudence cases. *Id.* at 2471. In establishing the motion-to-dismiss framework, *Dudenhoeffer* addressed prudence claims based on public information, as well as those based on non-public information—both of which are here alleged. *Id.*

According to *Dudenhoeffer*, where a stock is publicly traded, "allegations that a fiduciary

-8-

should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances." *Id*. The Court found that ERISA fiduciaries may "prudently rely on the market price" of stock as an unbiased assessment of the security's value in light of all public information. *Id*. Stated differently, a "fiduciary is usually not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stocks traded on it that is available to him." *Id*. (alteration in original) (internal quotation marks omitted). Absent special circumstances "affecting the reliability of the market price as an unbiased assessment of the security's value in light of all public information," breach of prudence allegations based solely on public information do not stand. *Id*. (internal quotation marks omitted).

*Dudenhoeffer* also addressed breach of prudence claims based on non-public—or inside—information. "To state a claim for breach of the duty of prudence on the basis of inside information, a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." *Id*. at 2472. *Dudenhoeffer* provides three points to inform the Court's analysis:

> First, in deciding whether the complaint states a claim upon which relief can be granted, courts must bear in mind that the duty of prudence, under ERISA . . . does not require a fiduciary to break the law. . . .
>
> Second, where a complaint faults fiduciaries for failing to decide, on the basis of the inside information, to refrain from making additional stock purchases or for failing to disclose that information to the public so that the stock would no longer be overvalued, additional considerations arise. The courts should consider the extent to which an ERISA-based obligation either to refrain on the basis of inside information from making a planned trade or to disclose inside information to the public could conflict with the complex insider

-9-

> trading and corporate disclosure requirements imposed by the federal securities laws or with the objectives of those laws. . . .
>
> Third, lower courts faced with such claims should also consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that stopping purchases—which the market might take as a sign that insider fiduciaries viewed the employer's stock as a bad investment—or publicly disclosing negative information would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund. . . .

*Id.* at 2472–73.

### b.  Duty of Loyalty

The other component of ERISA's fiduciary duty at issue here—the duty of loyalty—requires "that all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries." *James*, 305 F.3d at 448–49 (quoting *Krohn*, 173 F.3d at 547) (internal quotation marks omitted).  The ERISA duty of loyalty includes the duty to avoid conflicts of interest.  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251–52 (1993); 29 U.S.C. § 1104(a).  In accordance with the great weight of authority, another court in this district has previously held that a conflict of interest does not exist simply because the fiduciary works as an agent of the employer, owns company stock, or is paid according to company performance.  *In re Ferro Corp ERISA Litig.*, 422 F. Supp. 2d. 850, 866 (N.D. Ohio 2006).  Rather, a plaintiff must prove that "those dual interests conflict" in order to implicate the duty of loyalty component.  *Id.*

### 2.  Count I (Breaches of Fiduciary Duties in Violation of ERISA §§ 404(a)(1)(B) and 405 by the Company Defendants, Investment Committee Defendants, and Plan Administrator Defendants)

In Count I, Plaintiffs allege that the Company Defendants, Investment Committee

Defendants, and Plan Administrator Defendants breached their fiduciary duties under ERISA §§ 404(a)(1)(B) and 405 by failing to prudently manage the Plan's assets. SAC ¶¶ 172–83. Specifically, Plaintiffs allege that Defendants knew or should have known that the investment of the Plan's assets in Cliffs Stock was imprudent as a retirement vehicle. *Id.* ¶ 172.

First, the Court finds that *Dudenhoeffer* forecloses Plaintiffs' breach of prudence claim to the extent that it is based on publicly available information.[3] As the Supreme Court stated in *Dudenhoeffer*, "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible *as a general rule*." 134 S. Ct. at 2471 (emphasis added). Absent special circumstances "affecting the reliability of the market price as an unbiased assessment of the security's value in light of all public information," Plaintiffs' prudence claim cannot stand. *Id.*

The Supreme Court has stated that market inefficiency is a special circumstance that permits a prudence claim based on public information. *Id.* However, market inefficiency is not shown here. Cliffs' Stock was publicly traded on the New York Stock Exchange ("NYSE") throughout the class period. *See* Def.'s Mem. 8 (citing multiple exhibits). Without question, the NYSE is an efficient market upon which Defendants were entitled to rely. Moreover, due to the exceptional amount of negative publicity regarding the decline of Cliffs and the United States coal industry, it was well known that Cliffs' Stock was—and had been, throughout the class

---

[3] Despite Plaintiffs' argument that *Dudenhoeffer* applies only to their "artificial inflation" claims and not their "excessive risk" claims, the Court finds this distinction illusory. *See* Pl.'s Mem. in Opp. 17, Doc #: 40. Moreover, recent case law indicates that *Dudenhoeffer* applies to the SAC in its entirety. *See In re Lehman Bros. Sec. & ERISA Litig.*, No. 15-2229 (2d Cir. Mar. 18, 2016).

period—extremely volatile. Plaintiffs give the Court no reason to believe that the market was incapable of digesting this information. Thus, Plaintiffs have not established market inefficiency as a special circumstance as described in *Dudenhoeffer*.

Nevertheless, Plaintiffs argue that "special circumstances" under *Dudenhoeffer* are not limited to market inefficiency, alleging that the "special circumstances" applicable here are excessive risk, lack of a reasoned decision making process, failure to investigate, and willful or negligent disregard of the warning signs regarding a change in an employer's security investment. Pl.'s Mem. in Opp. 21–23. The Court rejects this argument for a number of reasons. First, the Supreme Court in *Dudenhoeffer* squarely rejected the Court of Appeals' finding that excessive risk constituted a "special circumstance" that rendered reliance on the market price imprudent. 134 S. Ct. at 2472 ("The court's decision to deny dismissal therefore appears to have been based on an erroneous understanding of the prudence of relying on market prices."). Plaintiffs allege no facts in the SAC to suggest that the "excessive risk" complained of here rendered reliance on the market price imprudent. Second, the SAC contains no allegations of lack of reasoned decision making processes, failure to investigate, or negligent behavior on the part of the Defendants. Plaintiffs merely point to the publicly available information discussing Cliffs' financial deterioration. Absent any factual allegations that special circumstances actually exist, this argument does not spare Plaintiffs' prudence claim under *Dudenhoeffer*.

Likewise, *Dudenhoeffer* forecloses Plaintiffs' prudence claim based on non-public information as well. Under *Dudenhoeffer*, the Court must consider "the extent to which an ERISA-based obligation either to refrain on the basis of inside information from making a planned trade or to disclose inside information to the public could conflict with the complex

insider trading and corporate disclosure requirements imposed by the federal securities laws or with the objectives of those laws." *Id.* at 2473. As a threshold matter, the SAC fails to allege any material non-public information that would have turned an otherwise acceptable investment into an imprudent one. In fact, while Plaintiffs assert that Defendants acted imprudently based on inside information, they never actually allege what that inside information *was*. Instead, Plaintiffs argue that "the only question that remains is if there are any steps Defendants could have taken to remedy this situation that would have been consistent with the securities laws and which another fiduciary could conclude would not have not [sic] done more harm than good to the stock fund." Pl.'s Mem. in Opp. 13. The SAC goes on to allege that Defendants could have done the following to remedy the ESOP situation: (1) directed that "all Company and Plan Participant contributions to the Company Stock fund be held in cash rather than be used to purchase Cliffs' Stock," (2) "closed the Company Stock itself to further contributions and directed that contributions be diverted" into other prudent investments, (3) "sought guidance from the DOL or SEC as to what they should have done," (4) "resigned as Plan fiduciaries to the extent they could not act loyally and prudently," and (5) "retained outside experts to serve either as advisors or as independent fiduciaries specifically for the Plan." SAC ¶¶ 97–101.

Even assuming that Plaintiffs need not allege any material non-public information, their prudence claim still fails under *Dudenhoeffer* and subsequent cases. Plaintiffs' arguments are squarely rejected by the Supreme Court in *Amgen Inc. v. Harris*, 136 S. Ct. 758 (2016). *See* Def.'s Mem. 8–11. In *Amgen*, the Court reversed the Ninth Circuit's holding that the plaintiffs' complaint satisfied *Dudenhoeffer*. The *Amgen* plaintiffs' allegations of what the defendants could have done based on non-public information are strikingly similar to those in the instant

case. For example, the *Amgen* plaintiffs alleged that the defendants could have "[made] appropriate disclosures as necessary; divest[ed] the Plan of Company Stock; preclud[ed] additional investment in Company Stock; consult[ed] independent fiduciaries regarding appropriate measures to take in order to prudently and loyally serve the participants of the Plan; or resign[ed] as fiduciaries of the Plan to the extent that as a result of their employment by the Company they could not loyally serve." First Amended Class Action Consolidated Complaint ¶¶ 344, *Harris v. Amgen, Inc.*, 2010 WL 744123, 2010 U.S. Dist. LEXIS 26283 (C.D. Cal. 2009) (No. CV 07-5442). In evaluating these claims, the Supreme Court found that the Ninth Circuit "failed to assess whether the complaint in its current form '[had] plausibly alleged' that a prudent fiduciary in the same position 'could not have concluded' that the alternative action 'would do more harm than good.' *Amgen*, 136 S. Ct. at 759 (quoting *Dudenhoeffer*, 134 S. Ct. at 2463). Here, the SAC fails to allege that a prudent fiduciary in Defendants' position could not have concluded that the alternative actions would be detrimental to Cliffs. Absent allegations by Plaintiffs to the contrary, the Court is certainly not at liberty to conclude that this is necessarily so. Therefore, Plaintiffs' prudence action does not satisfy *Dudenhoeffer*.

### 3. Count II (Breaches of Fiduciary Duties in Violation of ERISA §§ 404(a)(1)(A) and 405 by the Officer Defendants)

Count II of the SAC alleges that the Company Defendants, Officer Defendants, Investment Committee Defendants, and Plan Administrator Defendants breached their duty of loyalty under ERISA §§ 404(a)(1)(A) and 405. Plaintiffs allege that these Defendants failed to discharge their duties solely in the interest of the Plan participants and beneficiaries. SAC ¶ 187.

The SAC makes a number of vague allegations that Defendants placed their own interests

above the interests of the participants with respect to the Plan's investment in Cliffs' securities. *Id.* ¶ 189. First, the SAC alleges that Defendants failed to protect Plan participants in light of natural biases toward investment of company stock. *Id.* ¶ 191–92. Thus, Plaintiffs argue that Defendants "disregarded their duties of loyalty to the benefit of the Company as demonstrated by the Plan's massive investment of Plan assets in Company Stock." *Id.* ¶ 192. It is not entirely clear to the Court that this claim is separate from the inadequately-pled prudence claim. The SAC states that the "thrust of Plaintiffs' allegations" under Count II is that Defendants "allowed the investment of the Plan's assets in Cliffs Stock throughout the Class Period despite the fact that they knew or should have known that the investment was imprudent as a retirement vehicle." SAC ¶ 192. In arguments overlapping with those made in Count I, Plaintiffs allege that this imprudence constitutes a breach of ERISA's loyalty duty. However, as previously discussed, Plaintiffs fail to properly allege that the investment of Plan assets in Cliffs' Stock was imprudent under ERISA. Because Count I is not adequately pled, it cannot form a basis for Plaintiffs' Count II loyalty claim.

Next, the SAC broadly alleges that Defendants made direct and indirect communications with the Plan's participants in which they omitted and misrepresented information regarding, or materially related to, investments in Cliffs' Stock. *Id.* ¶ 190. However, Plaintiffs allege no actual facts supporting this claim. *See James*, 305 F.3d at 449 ("To establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, a plaintiff must show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to their detriment"). The SAC merely

states that "conference calls with analysts, SEC filings, annual reports, press releases, and Plan documents" contained misrepresentations with respect to investments in Cliffs' Stock. *Id.* Plaintiffs do not identify or describe any filings, reports, or documents containing said misrepresentations. Nor do they attempt to explain what was omitted or misrepresented. The cursory allegations of misrepresentation contained in the SAC do not satisfy the requirements set forth in *James*.

To the extent that Plaintiffs allege misrepresentation as to Cliffs' financial deterioration, the Court rejects this argument as well. The SAC contains a significant amount of publicly available information indicating that Cliffs' Stock was extremely volatile, including media reports, expert analyses, and Cliffs' own statements. *See* SAC ¶¶ 81–156. Based on the exceptional amount of negative information available to the public, it cannot be seriously disputed that Cliffs' Stock was volatile. Thus, Plaintiffs have not adequately plead any material misrepresentation.

Finally, Plaintiffs contend that Defendants had a conflict of interest due to their ownership in Cliffs Stock. *Id.* ¶ 193–95. Another court in this district has held that a fiduciary's ownership of company stock does not create a conflict of interest absent a plaintiff's allegations that "those dual interests conflict." *In re Ferro*, 422 F. Supp. 2d at 866. In the instant case, Plaintiffs make no allegations of self-dealing on the part of the Defendants. While Plaintiffs make bare allegations of Defendants' conflict of interest, they point to no specific transactions that indicate a benefit to Defendants and detriment to Plaintiffs. In fact, as opposed to creating conflict, Defendants' stock ownership appears to align their interests with those of Plaintiffs.

Plaintiffs argue that they need not "prove every disloyal act they claim [Defendants] took

during the Class Period." Pl.'s Mem. in Opp. 25. While this may be true, Plaintiffs must make some allegations of self-dealing in order to state a claim. *See Iqbal,* 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). The Court finds no such allegations in the SAC. Therefore, Plaintiffs fail to state a claim for breach of the duty of loyalty.

### 4. Conclusion

Based on the above discussion, the Court finds that Plaintiffs fail to state a claim for breach of ERISA's fiduciary duty on both prudence and loyalty grounds. Because *Dudenhoeffer* squarely forecloses Plaintiffs' prudence claim, the Court finds that further amendment would necessarily be futile. Thus, the Court dismisses Count I of the SAC with prejudice.

While it is certainly not clear to the Court that Plaintiffs will be able to allege facts sufficient to address the deficiencies in Count II, the SAC is essentially silent as to self-dealing. As a result, it is not clear to the Court that Plaintiffs' loyalty claim is *necessarily* futile. *See* Fed. R. Civ. P. 15(a)(2); *Newberry v. Silverman*, 789 F.3d 636, 645 (6th Cir. 2015). However, Plaintiffs have neither requested leave to amend nor alleged, in their Memorandum in Opposition, any additional facts which, if added to the SAC, might properly allege a loyalty breach. Thus, given the absence of both motion and factual refutation, the Court is disinclined to *sua sponte* grant leave to amend. The Court therefore dismisses Count II of the SAC without prejudice.

### B. Count III

Finally, Count III of the SAC alleges that the Officer Defendants breached their fiduciary duties in violation of ERISA § 404 by failing to adequately monitor other fiduciaries and provide

-17-

them with accurate information. SAC ¶¶ 199–210. Specifically, Plaintiffs allege that the Officer Defendants are "liable as co-fiduciaries because they knowingly participated in each other's fiduciary breaches as well as those by the monitored fiduciaries, they enabled the breaches by those Defendants, and they failed to make any effort to remedy these breaches despite having knowledge of them." *Id.* ¶ 208.

Pursuant to 29 U.S.C. § 1105(a), a plan fiduciary may be liable as a co-fiduciary for failure to monitor other fiduciaries and provide them with accurate information

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

The Sixth Circuit has yet to determine whether an underlying breach of fiduciary duty is required for failure-to-monitor liability. However, at least one circuit—as well as district courts in the Sixth Circuit—have held that a failure to monitor claim does not survive absent a predicate breach of fiduciary duty by a monitored fiduciary. *See, e.g.*, *In re Lehman Bros.*, No. 15-2229 (holding that plaintiffs could not establish a monitoring claim absent an underlying fiduciary breach); *Rinehart v. Akers*, 722 F.3d 137, 154 (2d Cir. 2013) ("Plaintiffs cannot maintain a claim for breach of the duty to monitor by the Director Defendants absent an underlying breach of the duties imposed under ERISA"), *abrogated on other grounds by Dudenhoeffer*, 134 S. Ct. 2459; *Benitez v. Humana Inc.*, No. 3:08CV-211-H, 2009 WL 3166651, at *11 (W.D. Ky. Sept. 30,

2009) ("It is appropriate to dismiss a failure to monitor claim when Plaintiffs fail to adequately allege any breaches of fiduciary duty"), *abrogated on other grounds by Dudenhoeffer*, 134 S. Ct. 2459; *In re Huntington Bancshares Inc. ERISA Litig.*, 620 F. Supp. 2d 842, 856 (S.D. Ohio 2009) (dismissing a monitoring claim because plaintiffs did not "adequately plead the existence of any underlying fiduciary breach").

In the instant case, Plaintiffs have failed to adequately plead the existence of a fiduciary breach on the part of the monitored Defendants—namely, the Company Defendants, Investment Committee Defendants, and Plan Administrator Defendants. Therefore, because no predicate fiduciary breach exists under 29 U.S.C. § 1105(a), Count III cannot stand.[4] As previously discussed, the Court dismisses Count II of the SAC without prejudice, as it is not clear to the Court that the loyalty claim is *necessarily* futile. *See* Fed. R. Civ. P. 15(a)(2); *Newberry*, 789 F.3d at 645. Because Plaintiffs may theoretically plead an underlying breach of the duty of

---

[4] Plaintiffs cite numerous cases to support the premise that a monitoring claim is "separate and distinct" from a breach of fiduciary duty claim. *See* Pl.'s Mem. 26 n.55. The Court agrees. However, the question before the Court is not whether the monitoring claim is "separate and distinct," but whether it requires an underlying breach of fiduciary duty by the monitored Defendants. Plaintiffs argue that they need only allege the Officer Defendants' failure to appoint and oversee members of the Investment Committee in order to state a claim. *Id*. Thus, they allege, a monitoring claim can stand absent an underlying breach of fiduciary duty. *Id*. at 26–27. However, the entirety of the cases that Plaintiffs cite to this end do *not* involve monitoring claims that stand alone; rather, they are cases in which the court sustained an underlying breach of fiduciary duty claim in addition to a failure to monitor claim. *See, e.g.*, *Ramirez v. J.C. Penney Corp.*, No. 6:14-CV-601, 2015 WL 5766498 (E.D. Tex. Sept. 29, 2015) (sustaining a breach of the duty of prudence claim as well as a monitoring claim); *In re Ford Motor Co. ERISA Litig*, 590 F. Supp. 2d 883 (E.D. Mich. 2008) (same); *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850 (N.D. Ohio 2006) (sustaining claims for breach of the duties of prudence and loyalty as well as a monitoring claim). Therefore, Plaintiffs' reliance on these cases is not persuasive.

loyalty, the Court also dismisses Count III without prejudice.

IV. **Conclusion**

For the foregoing reasons, the Court grants in part Defendants' Motion to Dismiss, Doc #: 38, and dismisses Count I of the SAC with prejudice. The Court dismisses Counts II and III without prejudice.

**IT IS SO ORDERED.**

                            */s/ Dan A. Polster     Apr. 1, 2016*
                            **DAN AARON POLSTER**
                            **UNITED STATES DISTRICT JUDGE**